IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERVIN LEE BOLLING | Criminal Action No.<br><br>1:25-CR-169 |

**Government's Sentencing Memorandum**

The United States of America, by Theodore S. Hertzberg, United States Attorney, and Katherine I. Terry, Assistant United States Attorney for the Northern District of Georgia, files this sentencing memorandum.

**Factual and Procedural History**

On April 1, 2024, the defendant, Ervin Lee Bolling, crashed his vehicle into the security barrier at the FBI Atlanta headquarters, causing damage totaling $25,613.71. (Presentence Report, "PSR," at ¶¶ 14, 35.) At the FBI headquarters employee entrance, there is a fence, a secure security arm, and a final denial floor barrier that prevent entry onto the property. (*Id.*) There is also a sign posted stating, "U.S. Government Property, for official business only…no loitering or trespassing." (*Id.*) That day, at approximately 12:15 p.m., FBI Special Agent Martin had driven to the employee entrance when he noticed Mr. Bolling's orange SUV pull up behind him. (*Id.*) Agent Martin stopped his vehicle at the entrance, went through the security procedures, waited for the arm to lift and barrier to lower, and then drove through the barrier into the secured space. (*Id.*)

Shortly thereafter, Agent Martin heard a crash and saw that Mr. Bolling's vehicle had rammed into the now-raised security barrier. (*Id.*)

After a few minutes, Mr. Bolling exited his vehicle and began walking around inside the perimeter fence while making incoherent statements. (*Id.*, ¶ 16.) Mr. Bolling initially refused to follow agent commands to sit on the curb and pulled away from agents' attempts to handcuff him. (*Id.*, ¶ 17.) Agents then restrained Mr. Bolling on the ground and placed him in handcuffs. (*Id.*)

DeKalb County Police Department, the FBI-Atlanta bomb response team, and Emergency Medical Services arrived on scene. (*Id.*, ¶ 18.) No weapons or bomb materials were found in Mr. Bolling's vehicle or on his person. (*Id.*, ¶ 18.) EMS responders evaluated Mr. Bolling and transported him to the local hospital. (*Id.*)

On April 3, 2024, Mr. Bolling appeared before the Honorable Catherine M. Salinas, United States Magistrate Judge, for his initial appearance. (Case No. 1:24-mj-284, Doc. 5.) After a preliminary hearing and detention hearing on April 8, 2024, Mr. Bolling remained in federal custody until his June 3, 2024 release to Dismas House. (Docs. 7, 14, 17.) On June 13, 2024, Mr. Bolling was accepted in the Department of Veterans Affairs mental health program psychiatric unit. (PSR, ¶ 6.) Since then, Mr. Bolling has either been in inpatient VA treatment or in housing sponsored or paid for by the VA. (*Id.*, ¶¶ 5 – 11.)

On April 21, 2024, Mr. Bolling entered a non-negotiated plea of guilty to one count of destruction of government property, in violation of 18 U.S.C. § 1361. (Case No. 1:25-CR-169, Doc. 1.) Mr. Bolling's sentencing is currently set for August 12, 2025.

On August 4, 2025, the parties received the final Presentence Investigation Report prepared by the United States Probation Office. The PSR found a total offense level of 6, a criminal history category I, a custody guideline range of 0 – 6 months, and a recommended supervised release term of 1 – 3 years. (PSR, pg. 18.) There are no unresolved objections to the guideline calculations.

## Argument and Citation to Authority

The government recommends that the Court sentence Mr. Bolling to six months in custody, three years of supervised release, and restitution of $25,613.17. As part of the conditions of supervised release, the government recommends that the Court require that Mr. Bolling continue his mental health treatment. Such a sentence meets the goals listed in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense; the history and characteristics of the defendant; the need to reflect the seriousness of the offense, promote respect for the law, to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and protect the public from further crimes of the defendant.

1. **The Nature and Circumstances of the Offense**

The nature and circumstances of the offense weigh in favor of a six-month custodial sentence. Mr. Bolling's actions were very serious and purposeful. Mr. Bolling crashed into the secured entrance to a government building. The security features were not ambiguous; there was a coded entry, a security arm, a floor barrier, and a fence with a warning sign posted. Furthermore, Mr. Bolling pulled in behind an agent and waited while the agent went through the security

protocol. After the agent passed through and the security measures re-set, Mr. Bolling purposely lurched his vehicle forward and crashed into the barriers. Furthermore, after the crash, Mr. Bolling got out of his vehicle and walked around the secured area until detained by agents. Only after the initial chaos did agents learn that Mr. Bolling was not armed and did not have explosives. The incident was extremely concerning for the law enforcement personnel present that day; thankfully, agents on scene acted with professionalism, de-escalating the situation to ensure no one was hurt.

**2. The need to provide adequate deterrence, both general and specific**

Any sentence in this case must also serve the goal of general deterrence of future criminal conduct. A sentence of six months in custody sends a clear message: attempts to breach secure federal facilities, particularly those tied to law enforcement and national security, will be met with serious consequences. Conduct like Mr. Bolling's poses a potential threat to public safety and the functioning of critical institutions. Even if Mr. Bolling's only intention was to harm himself, his actions could have created a very dangerous situation for agents or bystanders. By imposing a meaningful penalty, the Court reinforces the principle that damage to federal facilities will not be tolerated and will deter others from engaging in similar unlawful behavior.

**3. The history and characteristics of the defendant**

Finally, six months in custody is reasonable in light of Mr. Bolling's history and characteristics. Mr. Bolling is a retired Navy veteran who served as a SONAR officer on nuclear submarines for almost 24 years. Mr. Bolling also has

no prior criminal history.  The PSR also outlines the mental and emotional health struggles Mr. Bolling has dealt with since his childhood.  Post-military retirement, Mr. Bolling's mental health conditions appear to have worsened.  Interviews with family suggest this incident was the culmination of a mental health crisis and Mr. Bolling's attempt to hurt himself.  After his release from custody, Mr. Bolling meaningfully engaged with both substance abuse treatment and mental health treatment programing through the VA.  Thus, the government's recommendation, while at the high end of the guideline range, is significantly below the maximum 10-year term of imprisonment authorized by the statute.  A six-month custodial sentence is reasonable and accounts for Mr. Bolling's lack of criminal history and the role his mental health played in his decisions that day.

Further, three years of supervised release will allow the Court to monitor Mr. Bolling, ensure his continued participation in substance abuse and mental health treatment, and hopefully serve as an early alert to any future issues before they result in another crisis such as this.

## Conclusion

The government respectfully requests that the Court sentence Mr. Bolling to six months in custody, three years of supervised release, and restitution of $25,613.17.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*


/s/KATHERINE I. TERRY
*Assistant United States Attorney*
Georgia Bar No. 229887
Katie.terry@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181